IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SATONJA GRIFFIN** and **BIANCA MINOR**,         Case No.
individually, and on behalf of others similarly
situated,

            Plaintiffs,

vs.

**THE PORTARO GROUP INC.**, an Ohio
corporation,

            Defendant.

---

### COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

PLAINTIFFS, SATONJA GRIFFIN and BIANCA MINOR ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective/Class Action Complaint against DEFENDANT, THE PORTARO GROUP INC. ("Defendant"), and state as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Ohio Minimum Fair Wage Standards Act (the "Ohio Wage Act"), Ohio Rev. Code § 4111 *et seq.*, the Ohio Prompt Pay Act (the "OPPA"), Ohio Rev. Code § 4113.15, among other laws.

2.      Defendant is in the business of call center services and marketing for companies to consumers via inbound and outbound calls.

3.      In order to field these calls, Defendant employs call center employees, referred to herein as sales agents ("Agents"). Defendant employs these Agents, including Plaintiffs, in multiple call center facilities in Ohio.

4.      Defendant requires its Agents to work a full-time schedule, plus overtime. However, Defendant does not accurately record its Agents' compensable work time as required by law.

5.      Instead of paying Agents based on hours worked, Defendant manipulates its Agents' timesheets to eliminate the work they perform before and after their shifts, or simply makes up the hours based upon their scheduled work times.

6.      Defendant also pays its Agents monthly, quarterly and yearly bonuses/commissions but fails to incorporate these bonuses/commissions into its Agents hourly rates of pay for purposes of overtime compensation.

7.      Defendant's compensation scheme results in Agents not being properly paid for all time worked, including overtime.

8.      In the course of performing their job responsibilities, Defendant's Agents use multiple computer networks, software programs, applications, and phone systems. The time Agents spend booting up and logging into these programs and applications before and after their shifts is compensable because the programs and applications are an integral, indispensable, and important part of the Agents' work, and they cannot perform their jobs effectively without them.

9.      Defendant's Agents perform the same basic job duties and are required to use the same or similar computer networks, software programs, applications, and phone systems.

10.     The individuals Plaintiffs seek to represent in this action are current and former Agents who are similarly situated to each other in terms of their positions, job duties, pay structure,

and Defendant's violations of federal and state law.

11.     Defendant knew or could have easily determined how long it takes for its Agents to complete their work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

12.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

13.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

15.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

16.     Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce;

therefore, they are also covered by the FLSA on an individual basis.

17.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

18.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Ohio, employs individuals within the state of Ohio, is registered with the Ohio Secretary of State, and maintains its principal place of business in the state of Ohio.

20.     Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privilege of conducting activities in the state of Ohio and has established minimum contacts sufficient to confer jurisdiction over Defendant; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

21.     Venue is proper in the Northern District of Ohio because Defendant employs Agents in this District, and a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in this District.

## PARTIES

22.     PLAINTIFF, SATONJA GRIFFIN ("Plaintiff Griffin"), is a resident of Cleveland, Ohio. She was employed by Defendant as an Agent in Parma, Ohio from May 2017 through October 2018, and signed a consent form to join this collective action lawsuit, which is attached

4

hereto as **Exhibit 1**.

23.     PLAINTIFF, BIANCA MINOR ("Plaintiff Minor"), is a resident of Cleveland, Ohio. She was employed by Defendant as an Agent, Team Lead, Administrative Manager and Sales Manager in Parma, Ohio from March 2015 until April 2018, and signed a consent form to join this collective action lawsuit, which is attached hereto as **Exhibit 2**.

24.     Additional individuals were or are employed by Defendant as hourly Agents during the past three years, and their consent forms will also be filed in this case.

25.     DEFENDANT, THE PORTARO GROUP INC., is an Ohio corporation with a service of process address listed as 3800 Lakeside Avenue, Suite 301, Cleveland, Ohio 44114 and an Ohio Corporate Number of 1444112. Defendant's registered agent for service in Ohio is Brett Portaro.

26.     Defendant is an AT&T Solution Provider that markets and sells telecommunications products and services from third-party vendors including AT&T, Comcast, Charter, Verizon, CenturyLink, Qwest, Frontier and others. *See, generally, https://www.theportarogroup.com* (last visited on November 2, 2018).

27.     Upon information and belief, Defendant employed dozens, if not hundreds, of Agents—including Plaintiffs—in Ohio during the last three years to perform services which include selling telecommunications products and services over the phone.

## GENERAL ALLEGATIONS

28.     Plaintiffs were employed by Defendant as Agents in Parma, Ohio within the last three years. In that position, they were compensated pursuant to an hourly wage equal to approximately $10 per hour, plus monthly, quarterly and yearly bonuses/commissions. Plaintiffs typically worked five days each week and up to 40 or more hours per week.

29.     Throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their jobs as Agents.

30.     Defendant's Agents are responsible for, among other things: (a) booting up their computers and logging into several software programs and applications before taking/making phone calls; (b) remaining on the phones until they make a sale; (c) making outbound calls when no calls are incoming; (d) ensuring that every inbound call is accounted for in Defendant's computer systems; (e) if needed, asking sales managers for additional sales leads to call; and (f) logging out of the computer programs/applications and shutting down their computers.

31.     Defendant requires its Agents to work rigid schedules, usually consisting of at least eight hours per day and five days per week, resulting in overtime hours on a weekly basis.

32.     Defendant has strict expectations that its Agents will remain on the phone until they make a sale, every scheduled day, and Defendant threatens discipline if an Agent fails to do so.

33.     Defendant requires its Agents to clock in/out for their shifts but does not accurately record its Agents' compensable work time as required by law. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

**Defendant's Compensation System**

34.     Defendant's Agents are paid on an hourly basis, plus monthly, quarterly and yearly bonuses/commissions.

35.     However, because Defendant fails to accurately record its Agents' work time, Defendant's compensation system fails to properly account for and compensate Agents for all time worked, including their overtime hours, during each day and during each workweek.

36.     The hours reflected on the Agents' paystubs are not accurate, are contrived by

6

Defendant, and have no relation to the hours the Agents actually worked for Defendant. To the best of Plaintiffs' knowledge, Defendant either manipulated their timesheets to eliminate the work they performed before and after their shifts, or simply made up the hours based upon their scheduled work times.

37.     As a result of Defendant's compensation policy, Plaintiffs and all other Agents are deprived of pay for compensable time worked, including overtime.

38.     Defendant also pays bonuses/commissions to its Agents, but Defendant's bonus/commission compensation scheme is shrouded in mystery. Defendant does not furnish Agents with information, such as a commission schedule or sales compensation plan, clearly outlining the bonus/commission structure. For example, Defendant does not disclose to its Agents what products or services qualify for bonuses/commissions, what percentage bonus/commission they are entitled to, how these bonuses/commissions are calculated, whether these bonuses/commissions are contingent or subject to a chargeback, or any other information sufficient to ascertain the nature of Defendant's bonus/commission structure.

39.     Instead, Agents are furnished with a one-page document outlining what's called the "Solution Provider Champion Rewards Program," a confusing bonus/commission compensation scheme consisting of a points based system whereby Agents accumulate sales points in order to attain various tier levels (Diamond, Platinum, Gold, Silver, Bronze), with no clear explanation of how to accumulate sales points or how many points Agents earn for selling products or services.

40.     In any event, Defendant does not incorporate these bonuses/commissions into its Agents' regular rates of pay for purposes of overtime compensation. Consequently, Defendant fails to properly compensate Plaintiffs and its other Agents for their overtime hours worked.

41.     The Agents' bonuses/commissions are paid to them in the form of monthly,

7

quarterly and yearly bonuses, based upon the number of sales points earned by the Agent in the preceding month, quarter and year, as the case may be.

42.     If, however, an Agent's sale is not processed by Defendant by the 15th of the month immediately succeeding the month in which the Agent made the sale, the Agent forfeits the sales points in connection with the unprocessed sale.

43.     These forfeited sales points are not chargebacks in connection with product returns or order cancellations, but instead represent a uniform policy whereby Defendant retains its Agents' earned (but unpaid) bonuses/commissions when the underlying sale is not processed by Defendant by the 15th of the following month.

44.     The   unpaid   bonuses/commissions   in   connection   with   the   Agents' forfeited/unprocessed sales represent earned wages that should be paid to Defendant's Agents and should be incorporated into their regular rates of pay for purposes of overtime compensation, but are not.

45.     In addition, if an Agent does not accumulate at least 40 sales points in at least two of the three months immediately preceding the month where quarterly bonuses are scheduled to be paid, the Agent is not paid a quarterly bonus, even if the Agent accumulated a sufficient number of sales points to qualify for a quarterly bonus.

46.     The unpaid bonuses/commissions in connection with the Agents' earned (but unpaid) quarterly bonuses represent earned wages that should be paid to Defendant's Agents and should be incorporated into their regular rates of pay for purposes of overtime compensation, but are not.

47.     Consequently, Defendant fails to pay its Agents for all wages earned and fails to properly compensate them for their overtime hours worked.

**Pre- and Post-Shift Off-the-Clock Work**

48.     In addition to their regularly scheduled shifts, Defendant's agents perform pre- and post-shift work that goes uncompensated.

49.     Pursuant to Defendant's policies, training and direction, Agents are required to startup and login to various secure computer networks, software programs, and applications in order to access information and software.

50.     The Agents' startup and login process takes substantial time on a daily basis with said time ranging from 10 to 15 minutes per day, or even as much as 30 minutes if technical issues arise.

51.     Defendant expressly instructs and trains Agents to have all their computer networks, software programs, and applications open and ready at the start of their scheduled shifts to ensure they are prepared to make and receive calls (i.e., are "phone ready") at the moment their shifts begin.

52.     Consequently, Agents are required to arrive to work approximately 10 to 15 minutes ahead of their scheduled start time to complete the startup and login process.

53.     Defendant's Agents are not compensated for this time, which directly benefits Defendant and is an essential part of the Agents' job responsibilities.

54.     Moreover, pursuant to Defendant's policies, training and direction, Agents are frequently required to report to work 15 to 20 minutes early to attend mandatory work-related meetings or training sessions. These mandatory pre-shift meetings/training sessions occur approximately five to six times per year. Defendant does not compensate its Agents for this time.

55.     Additionally, Defendant's Agents are required to logout of and close down various computer software programs and applications at the end of each shift. The log-out process occurs

each shift with said time ranging from one to two minutes per day.

56.    Further, Defendant's Agents frequently handle calls that last up to 30 to 60 minutes or more past the end of their scheduled shifts; Defendant fails to pay for that work time.

57.    Finally, pursuant to Defendant's policies, training and direction, Agents are frequently required to stay at work for 15 to 20 minutes after the end of their shifts to attend mandatory work-related meetings or training sessions. These mandatory post-shift meetings/training sessions occur approximately five to six times per year. Defendant does not compensate its Agents for this time.

58.    The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Agents, are homogenous, and it issued Fact Sheet #64 (attached hereto as **Exhibit 3**) in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.*, at p. 2.

59.    The DOL's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre- and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

**Meal Period Off-the-Clock Work**

60.    Defendant promises each Agent a 45-minute unpaid meal period during each shift. However, in reality, Defendant routinely requires Agents to work through unpaid meal periods if

there are not enough Agents to cover the phones, if the Agents have not made enough sales, or if there are sales calls scheduled during the Agents' meal breaks.

61.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 C.F.R. 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

62.     Defendant does not provide its Agents with a legitimate bona fide meal period because it requires its Agents to return to their computer stations prior to the end of their meal periods and then to spend off-the-clock time logging back into the necessary computer/software programs and applications needed to begin taking customer calls promptly at the end of their scheduled meal periods.

63.     The work performed by Agents during their unpaid meal periods takes substantial time on a daily basis with said time ranging from one to five minutes per day, or more, depending on whether they were kicked out of their computer programs while on lunch.

**Rest Period Off-the-Clock Work**

64.     Defendant provides its Agents with one unpaid eight-minute and one unpaid seven-minute rest break each shift.

65.     These eight- and seven-minute rest breaks are automatically deducted from Agents' compensable work time each and every day.

66.     Under federal regulations, if the employer provides breaks between five and 20 minutes, it must pay employees for those breaks as "hours worked." 29 C.F.R. 785.18. The rationale is that those breaks primarily benefit the employer by increasing the efficiency of the employee: "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. **They must be counted as hours worked**." *Id*. (emphasis added).

67.     According to the DOL website,

Federal law does not require lunch or coffee breaks. However, when employers do offer short breaks (usually lasting about 5 to 20 minutes), **federal law considers the breaks as compensable work hours** that would be included in the sum of hours worked during the work week and considered in determining if overtime was worked.

*https://www.dol.gov/general/topic/workhours/breaks* (last visited on November 2, 2018) (emphasis added).

68.     According to a recent decision in a call center case by the Third Circuit Court of Appeals, employers must pay employees for breaks lasting 20 minutes or less, even when they are logged off their computers and not doing any work. *Sec. U.S. Dept. of Lab. v. Am. Future Sys., Inc.*, 873 F.3d 420, 423 (3d Cir. 2017) ("[W]e conclude that the Fair Labor Standards Act does require employers to compensate employees for all rest breaks of twenty minutes or less.").

69.     Here, too, Defendant employs an unlawful rest break policy wherein it refuses to pay its Agents for compensable work time (i.e., rest breaks) totaling 15 minutes each day. This unlawful policy results in Agents not being paid for all time worked, including overtime.

**Defendant Unlawfully Benefitted From Its Agents' Uncompensated Work**

70.     At all relevant times, Defendant directed and directly benefited from the startup and login time, meal period time, rest break time, and logout time performed by its Agents.

71.     At all relevant times, Defendant controlled the work schedules, duties, protocols,

applications, assignments and employment conditions of its Agents.

72.     At all relevant times, Defendant was able to track the amount of time its Agents spent starting up, logging in to, and logging out of Defendant's computer and phone systems; however, Defendant failed to document, track, or pay its Agents for all the work they performed, including off-the-clock work.

73.     At all relevant times, Plaintiffs were non-exempt employees, subject to the requirements of the FLSA.

74.     At all relevant times, Defendant used its attendance and adherence policies against its Agents in order to pressure them into arriving early and working off-the-clock.

75.     At all relevant times, Defendant's policies and practices deprived its Agents of wages owed for the pre-shift, meal period, rest period and post-shift work activities. Because Defendant's Agents typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

76.     Defendant knew or should have known that Plaintiffs and other Agents' off-the-clock work was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

77.     As non-exempt employees, Defendant's Agents were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

78.     Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. 778.108.

79.     No matter how an employee is paid—whether by the hour, by the piece, on a

13

commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. 778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

80. Defendant's bonus/commission compensation scheme did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. § 207(e)(1)-(8).

81. A commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. 778.117.

> This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. *Id*.

82. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. The burden is on Defendant to establish that any payment should be excluded. Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

83. Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular

14

workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. 778.118.

84.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling*, 325 U.S. at 425. The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

85.     Because Defendant's compensation scheme failed to incorporate the Agents' bonuses/commissions into their regular rate of pay for purposes of overtime compensation, Defendant failed to properly compensate Plaintiffs and its other Agents under the FLSA.

86.     An addition to its failure to incorporate all remuneration into its Agents' regular rate of pay calculation, Defendant also employs a policy and practice of refusing to pay earned (but unpaid) bonuses/commissions to Agents who have been terminated or resigned, meaning that Defendant improperly and unlawfully retains wages rightfully earned and owed to Agents who Defendant no longer employs.

**Defendant Failed to Provide Agents with Promised Referral Bonuses**

87.     Defendant promises its Agents a $500 referral bonus for recruitment of new employees. In order to qualify for such bonus, the referred employee must be hired by Defendant and must accumulate 100 sales points within the first 90 days of employment.

88.     At all relevant times, Defendant failed to provide the promised referral bonuses to Plaintiffs and other Agents.

89.     For example, Plaintiff Griffin recruited and referred to Defendant an employee,

Shamaria Riddle, who was hired by Defendant and who attained the necessary 100 sales points within her first 90 days of employment.

90.     Approximately four and one-half months have passed since Ms. Riddle was hired; yet, Defendant has failed and refused to furnish Plaintiff Griffin with her $500 referral bonus.

91.     Plaintiff Griffin brought the issue to the attention of Defendant's General Manager, George Shamatta ("General Manager Shamatta"), who informed Plaintiff Griffin that AT&T is responsible for paying the $500 referral bonus to Defendant, and that once Defendant receives the bonus from AT&T, it will forward the bonus to Plaintiff Griffin.

92.     Upon information and belief, Defendant maintains a common policy and practice of retaining and pocketing referral bonuses received from AT&T and other third parties, or simply not paying promised referral bonuses to its Agents.

93.     The $500 referral bonuses were explicitly promised to Plaintiffs and all other Agents as an incentive to induce them to recruit new employees for Defendant. Thus, the promised bonuses represent valid consideration in exchange for the Agents' solicitation, recruitment and referral of new employees.

94.     Defendant was contractually obligated to provide Plaintiffs and all other Agents with all of the referral bonuses that were promised to them (and that the Agents earned) as part of Defendant's referral bonus program.

95.     To this day, Defendant continues to promise its Agents a $500 referral bonus for the recruitment of new employees.

96.     Defendant breached its contracts with Plaintiffs and other Agents by, *inter alia*, failing to provide them the promised $500 referral bonuses.

97.     In addition, Defendant was unjustly enriched by the retention of promised referral

bonuses that were earned and that rightfully belong to Plaintiffs and other Agents. Defendant was unjustly enriched in that it induced Agents to perform solicitation, recruitment and referral services for the benefit of Defendant and retained the benefit of these services without having paid for the same.

## FLSA COLLECTIVE ACTION ALLEGATIONS

98.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All current and former Agents who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

99.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated Agents.

100.    Excluded from the proposed FLSA Collective are Defendant's executive, administrative, and professional employees, including computer professionals and outside sales persons.

101.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

102.    All of the work that Plaintiffs and the FLSA Collective members performed was assigned by Defendant, and/or Defendant was aware of all of the work that Plaintiffs and the FLSA Collective members performed.

103.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiffs and the FLSA Collective members. This policy and pattern or practice includes, but is not limited to:

    a.    willfully failing to pay its employees, including Plaintiffs and the FLSA Collective, for all hours worked including premium overtime wages for all hours worked in excess of 40 hours per workweek; and

    b.    willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, worked for Defendant's benefit.

104.    Defendant is aware or should have been aware that federal law required it to pay Plaintiffs and the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek.

105.    Defendant failed to properly maintain timekeeping and payroll records pertaining to the FLSA Collective under the FLSA, 29 U.S.C. § 211(c).

106.    Defendant's unlawful conduct was widespread, repeated, and consistent.

107.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

108.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift startup/login time, unpaid meal and rest period time, and the amount of post-shift log-out/shut-down time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

109.    There are many similarly situated current and former Agents who were underpaid

in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

110. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

111. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

112. Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period will include dozens, if not hundreds, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## **RULE 23 CLASS ACTION ALLEGATIONS**

113. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former Agents who worked for Defendant in Ohio at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

114. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are dozens, if not hundreds, of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

115. There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions include, but are not limited to, the following:

a.   Whether the time Rule 23 Class members spent on pre-shift, mid-shift, and post-shift activities each shift is compensable time;

b.   Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Class member regular wages for each non-overtime hour worked;

c.   Whether Rule 23 Class members are owed wages for time spent performing off-the-clock work activities, and if so, the appropriate amount thereof;

d.   Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract and/or unjust enrichment; and

e.   Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating state law.

116.   Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Class members.

117.   Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

118.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the state.

119.   This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel

know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

120.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

121.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

122.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

123.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

124.     At all times relevant to this action, Plaintiffs and the FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

125.     Plaintiffs and the FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

126.     Defendant is not a "retail or service establishment" as defined by 29 U.S.C. § 213 of the FLSA.

127.     Plaintiffs and the FLSA Collective members either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise

engaged in commerce or in the production of goods for commerce.

128.   At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

129.   At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective members to perform off-the-clock work each shift, but failed to pay these employees the federally mandated overtime compensation for this work.

130.   The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective members is an essential part of their jobs, and these activities and the time associated with these activities is not *de minimis*.

131.   In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C. § 207.

132.   Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it took for its Agents to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

133.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, each employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 Class Action)
### BREACH OF CONTRACT

134.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

135.    At all times relevant to this action, Defendant had a contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate.

136.    Each Rule 23 Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

137.    Plaintiffs and every other Rule 23 Class member performed under the contracts by doing their jobs and carrying out the off-the-clock activities that Defendant required or accepted.

138.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for all of the work they performed each shift, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

139.    Plaintiffs' and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure gap time claims).

140.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an employer's job.

141.    Defendant also breached its contracts with Plaintiffs and other Rule 23 Class members by failing and/or refusing to (a) pay earned (but unpaid) bonuses/commissions to Agents, as described herein; and (b) furnish Agents with the promised $500 referral bonuses.

142.    As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Class have been damaged, in an amount

to be determined at trial.

### COUNT III
### (Rule 23 Class Action)
### UNJUST ENRICHMENT

143.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

144.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

145.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Class members performed for the benefit of Defendant.

146.    Plaintiffs and every other Rule 23 Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

147.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the pre-shift, mid-shift, and post-shift off-the-clock work they performed each shift, Defendant was unjustly enriched.

148.    Plaintiffs and the Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

149.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

150.    Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Class member to finance its various business ventures or pay its equity owners.

151.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Class for the same.

152.     Plaintiffs and the Rule 23 Class suffered detriment as a result of Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

153.     Defendant was also unjustly enriched by the retention of bonuses/commissions and promised referral bonuses that were earned and that rightfully belong to Plaintiffs and other Agents.

154.     As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Class member have suffered damages, including but not limited to, loss of wages.

<u>**COUNT IV**</u>
<u>**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**</u>
<u>**RETALIATION UNDER THE FLSA**</u>
<u>**(On behalf of Plaintiff Griffin)**</u>

155.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

156.     In December 2011, the DOL issued Fact Sheet #77A (attached hereto as **Exhibit 4**), providing "general information concerning the FLSA's prohibition of retaliating against any employee who has filed a complaint or cooperated in an investigation." *Id*., at p. 1.

157.     According to Fact Sheet #77A: "Section 15(a)(3) of the FLSA states that it is a violation for *any person* to 'discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.'" *Id*.

158.     "Employees are protected regardless of whether the complaint is made *orally* or *in writing*. Complaints made to the Wage and Hour Division are protected, and most courts have ruled that internal complaints to an employer are also protected." *Id*.

159.     Plaintiff Griffin issued numerous oral complaints to General Manager Shamatta and Supervisor Amber Bush Davenport that she was not being appropriately compensated for all of her time worked, including overtime. As a direct consequence thereof, General Manager Shamatta terminated Plaintiff Griffin on October 31, 2018.

160.     "Any employee who is 'discharged or in any other manner discriminated against' because, for instance, he or she has filed a complaint or cooperated in an investigation, may file a retaliation complaint with the Wage and Hour Division or may file a private cause of action seeking appropriate remedies including, but not limited to, employment, reinstatement, lost wages and an additional equal amount as liquidated damages." *Id*.

### COUNT V
### (Rule 23 Class Action)
### VIOLATIONS OF THE OHIO WAGE ACT
### OHIO REV. CODE ANN. § 4111, *et seq*.

161.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

162.     At all times relevant to this action, Defendant was an employer covered by the overtime and wage mandates of the Ohio Wage Act and Plaintiffs were employees entitled to the Ohio Wage Act's protections. *See* Ohio Rev. Code Ann. § 4111.03.

163.     The Ohio Wage Act entitles employees to compensation for every hour worked in a workweek. *See* Ohio Rev. Code Ann. § 4111.01.

164.     The Ohio Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week. *See* Ohio Rev. Code Ann. § 4111.03.

165.     Defendant violated the Ohio Wage Act by regularly and repeatedly failing to compensate Plaintiffs for the time spent on the work activities described in this Complaint.

166.     As a result, Plaintiffs have and will continue to suffer loss of income and other

damages. Accordingly, Plaintiffs are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Ohio Wage Act at an amount to be proven at trial.

**COUNT VI**
**(Rule 23 Class Action)**
**VIOLATIONS OF THE OHIO PROMPT PAY ACT**
**OHIO REV. CODE ANN. § 4113.15**

167.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

168.    Ohio Rev. Code Ann. § 4113.158(A) requires that employers pay their employees on or before the first day of each month wages earned during the first half of the preceding month ending with the fifteenth day thereof and pay their employees on or before the fifteenth day of each month wages earned during the second half of the preceding month.

169.    Ohio Rev. Code Ann. § 4113.15(B) requires that where wages remain unpaid for 30 days beyond a regularly scheduled payday and no contest, court order, or dispute accounts for the non-payment, the employee is entitled to liquidated damages in the amount of 6% or $200.00 per violation, whichever is greater.

170.    No bona fide and legally cognizable dispute related to wages exists accounting for Defendant's failure to timely pay Plaintiffs.

171.    Accordingly, Plaintiffs are entitled to recover the amount of damages due and owing from Defendant to Plaintiffs under Ohio Rev. Code Ann. § 4113.15(B).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the putative Collective and Rule 23 Class, request judgment as follows:

a.      Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claim set forth herein (Count I);

b.      Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule

23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Counts II, III, V, and VI);

c.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.  Designating Plaintiffs as the representative of the FLSA collective action Class and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

e.  Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.  Declaring Defendant's violation of the FLSA was willful;

g.  Declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

h.  Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Class, the full amount of damages and liquidated damages available by law;

i.  Granting judgment in favor of Plaintiff Griffin and against Defendant in connection with Plaintiff Griffin's FLSA retaliation claim and awarding Plaintiff Griffin the full amount of damages and liquidated damages available by law;

j.  An Order finding Defendant willfully violated Ohio Rev. Code Ann. § 4111 *et seq.*;

k.  An award of statutory damages under Ohio Rev. Code Ann. § 4113.15(B) in an amount determined to be due;

l.  Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

m.  Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

n.  Awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiffs, individually and on behalf of all others similarly situated, by and through their

attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure

and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

**BARKAN MEIZLISH DEROSE
WENTZ MCINERNEY PEIFER, LLP**

Dated: December 3, 2018

/s/ Robert E. DeRose
Robert E. DeRose (Ohio Bar ID: 0055214)
Jessica R. Doogan (Ohio Bar ID: 0092105)
250 E. Broad Street, 10th Floor
Columbus, OH 43215
T: (800) 274-5297
F: (614) 744-2300
Email: bderose@barkanmeizlish.com
Email: jdoogan@barkanmeizlish.com

*Local Counsel for Plaintiffs and the Putative
Collective/Class Members*

Jason J. Thompson (*will pro hac vice*)
Rod M. Johnston (*will pro hac vice*)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
jthompson@sommerspc.com
rjohnston@sommerspc.com

*Attorneys for Plaintiffs and the Putative
Collective/Class Members*